UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOLLIE T. NOVELETSKY, et al.,   )<br>                                                          )<br>              *Plaintiffs*          )<br>                                                          )<br>*v.*                                                    )         No. 2:12-cv-21-NT<br>                                                          )<br>METROPOLITAN LIFE INSURANCE )<br>COMPANY, INC., et al.,             )<br>                                                          )<br>              *Defendants*       ) | |

*MEMORANDUM DECISION AND ORDER*
*ON DISCOVERY DISPUTE*

The plaintiffs and defendant Metropolitan Life Insurance Company, Inc. ("MetLife") have briefed the question of whether, over objection, the plaintiffs should be permitted to discover material from a Mississippi state court case, *Weathers v. Metropolitan Life Ins. Co.*, Civil Action No.: CV-2001-0182-CV1 (Miss. Cir. Ct.), concerning so-called "vanishing premiums," *see* Plaintiffs' Memorandum in Support of Order Compelling Production of Selected Weathers Discovery ("Plaintiffs' Brief") (ECF Nos. 82); Defendant Metropolitan Life Insurance Company's Objection to Plaintiffs' Motion To Compel Certain Documents Related to the *Weathers* Litigation ("Defendants' Brief") (ECF No. 84) (sealed version).  I conclude that the plaintiffs have not shown that any of the requested *Weathers* documents is relevant, apart from any that MetLife has voluntarily agreed to produce and/or any that MetLife has previously been ordered by the court to produce.  Therefore, treating the instant discovery dispute as a motion by the plaintiffs to compel production of *Weathers* documents, I grant it only with respect to those materials, and otherwise deny it.

## I. Applicable Legal Standard

Rule 26 of the Federal Rules of Civil Procedure outlines general provisions governing discovery in a civil action:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

## II. Discussion

The plaintiffs seek the following *Weathers* documents, as narrowed to exclude any materials related to the insured's financial and medical information: (i) a compilation of some of the documents produced by MetLife in the *Weathers* case, referred to as "Exhibit E" in a memorandum filed in support of Weathers' reply to a motion by MetLife for partial summary judgment, (ii) copies of the deposition transcripts of James McKie, the MetLife agent who sold Weathers the policy at issue, as well as MetLife witnesses David Mancini and Edmund Rakowski, together with all deposition exhibits, and (iii) MetLife discovery responses as of five dates in 2003 and 2006. *See* Plaintiffs' Brief at 1; Notice of Filing Under Seal, *Weathers* (ECF No. 82-1), Exh. 1 thereto; Memorandum in Support of Plaintiff's Reply to Defendant Metropolitan Life Insurance Company's Motion for Partial Summary Judgment, *Weathers* ("*Weathers* Reply Memo") (ECF No. 82-2), Exh. 2 thereto, at 4 n.4, 9-13.

The *Weathers* case concerned what was represented as a "vanishing premium" life insurance policy, sold to Weathers by McKie in late 1993 and delivered to him in early 1994.

*See* Weathers Reply Memo at 5. Weathers argued that, in accordance with a nationwide "vanishing premium scheme," MetLife trained its agents to represent that the policy at issue would accrue sufficient dividends to obviate the need for further out-of-pocket premium payments after a certain number of years, and that this "vanishing premium" was "a sure thing," even though MetLife knew that it was not. *See id*. at 5-6, 14. According to Weathers' brief, McKie admitted during his deposition that he unequivocally represented to Weathers that, after 10 years, Weathers would not have to pay any more premiums out of pocket to keep his policy in force, and McKie did so in accordance with training and sales materials provided to him by MetLife, including a Track Book, computer illustrations, and software. *See id*. at 12-13. Weathers was still paying premiums on the policy more than 15 years later. *See id*. at 14.

The plaintiffs argue that the *Weathers* materials that they seek are discoverable "to uncover information not otherwise made available by MetLife on subjects relevant to this case[,]" including MetLife training or sales materials with respect to defendants Alan Silverman and Francine Temkin at or prior to the time the policy at issue in this case was sold (2001) and various compliance manuals and materials, some of which this court has ordered produced. Plaintiffs' Brief at 2. They state that they "want to understand how MetLife trained Silverman and Temkin to sell insurance in order to compare what Silverman and Temkin did against how they were trained[,]" information that is relevant to various claims, including negligence and their punitive damages request. *Id*.

MetLife has voluntarily agreed that, to the extent that it cannot locate training materials and sales records for the 1999 to 2001 period apart from those it has already produced, it will look to see whether those materials were produced in the *Weathers* litigation and, if so, produce them. Defendants' Brief at 1.

Nonetheless, the plaintiffs argue that all of the *Weathers* documents that they seek are discoverable on the grounds that (i) the 1994 *Weathers* training would be relevant *if* Silverman and Temkin were trained in the 1990s to use deceptive sales practices, and they used those same practices in their 2001 sale of the policy insuring plaintiff Hollie Noveletsky's life, (ii) it is reasonable to expect that discovery in *Weathers* was not strictly limited to documents applicable at the time of the *Weathers* policy sale, (iii) the plaintiffs have heeded concerns previously expressed by this court about the scope of vanishing premium litigation discovery and no longer press requests for production of documents in connection with class-action litigation against MetLife involving such practices, (iv) the production of the requested *Weathers* documents would not be burdensome, and (v) MetLife's objection did not comply with Federal Rule of Civil Procedure 34(b)(2)(C), which required MetLife to respond to discovery to the extent that the request was not objectionable. *See* Plaintiffs' Brief at 2-4.

The first two points implicate relevance. The plaintiffs contend that the full panoply of documents sought is relevant in that:

1. The policy at issue in this case is the same as that sold to Weathers, a Life98 policy. *See id.* at 1-2. The plaintiffs reason that, if Silverman and Temkin were trained by MetLife in the 1990s, when both were MetLife employees, to use deceptive sales practices, and Silverman/Temkin used those same sales practices in selling the Noveletsky policy in 2001, the 1994 training is relevant, and "there may well be other information in *Weathers* related to vanishing premiums sales tactics and policies and procedures at MetLife relevant to this case." *Id.* at 2-3.

2. Because the *Weathers* discovery spanned the period from 2003 to 2010, it is "reasonable to expect that discovery . . . was not strictly limited only to documents applicable at

the time the *Weathers* policy was sold[,]" just as, in this case, documents have been produced postdating the time of the sale of the policy at issue. *Id*. at 3.

However, as MetLife rejoins, *see* Defendants' Brief at 2, 4, the *Weathers* Reply Memo itself indicates that, about five years after the sale to Weathers, in response to a vanishing premium class-action lawsuit, MetLife "took everybody's Track Books and related sales materials[,]" instructed agents to stop using vanishing premium illustrations, and held seminars for the agents on how to change their sales techniques, *Weathers* Reply Memo at 10 n.7.

The plaintiffs point to no evidence that, despite this apparent change, Silverman and Temkin guaranteed a vanishing premium in 2001, and MetLife offers evidence indicating that they did not, including:

1. *Noveletsky's own testimony*. *See* Deposition of Hollie T. Noveletsky ("Noveletsky Dep.") (ECF No. 84-1), Exh. A to Defendants' Brief, at 62-63 (Silverman told Noveletsky that she would pay premiums for 10 years, possibly 12 if the economy was not good, but Noveletsky did not recall whether he had said that it was "guaranteed"; while Noveletsky did not think that she and Silverman had spoken about what the dividends would be, she agreed that he had said "something to the effect that it would depend on the economy . . . [j]ust as [Noveletsky's] business does[.]"); *see also id*. at 100 (asked whether Silverman had ever said "that it could never go beyond 12 years[,]" Noveletsky answered, "No"); and

2. *Language in a life insurance policy illustration prepared by Silverman for Noveletsky on July 21, 2001*. *See* Life Insurance Policy Illustration (ECF No. 84-2), Exh. B to Defendants' Brief, at 2 (stating that, while dividends could be used to reduce out-of-pocket premium payments, "[t]he amount of any future dividend cannot be guaranteed and is subject to change by MetLife[,]" and that "[a]ctual results may be more or less favorable than those

5

shown"). Although Noveletsky was not certain that this illustration was one that she had seen prior to the issuance of the policy in 2001, she acknowledged that she had seen an illustration prior to that time. *See* Noveletsky Dep. at 94-95.[1]

To the extent that the plaintiffs speculate that the *Weathers* documents may include materials postdating the 1993-94 sale and delivery of the policy to Weathers, nothing on the face of the *Weathers* Reply Memo indicates that this is likely. Whereas, in this case, the plaintiffs have alleged breaches of ongoing duties postdating the 2001 sale of the policy at issue, *see, e.g.,* First Amended Complaint (ECF No. 40) ¶ 129, the *Weathers* Reply Memo suggests that the *Weathers* case was predicated on training and sales materials provided, and representations made, on or before the policy at issue was sold in late 1993 and delivered in early 1994, *see generally* Weathers Reply Memo. In any event, MetLife has agreed to produce, if among the *Weathers* documents, any training materials and sales records for the 1999 to 2001 period apart from those it has already produced. *See* Defendants' Brief at 1.

The plaintiffs fall short of showing that any *Weathers* documents, apart from those that MetLife has agreed to produce if in existence, are relevant.

The third and fourth points go to the issue of the burdensomeness and reasonable scope of the discovery requests and, hence, would come into play only to the extent that the plaintiffs had made an adequate showing of the relevance of the *Weathers* documents.

The fifth point is well-taken. To the extent that MetLife has agreed to produce certain *Weathers* documents, which, if they exist, clearly are relevant, or there are materials included in the *Weathers* file that are among documents the court has ordered MetLife to produce, MetLife

---

[1] In addition, while MetLife states that it has not yet been able to locate specific training materials provided to Temkin and Silverman in 2001, *see* Defendants' Brief at 3, it files under seal a document that it represents is an In-Form Ready Reference Manual for Representatives for 2001, the language of which also supports its position, *see* Exh. C (ECF No. 84-3) thereto.

should have produced them. Accordingly, I grant the motion to the extent that the plaintiffs seek to compel the production of such documents.

### III. Conclusion

For the foregoing reasons, and treating the instant discovery dispute as a motion by the plaintiffs to compel the production of certain *Weathers* documents, the motion is **GRANTED** in part with respect to (i) training materials and sales records for the 1999 to 2001 period and (ii) documents that this court has ordered MetLife to produce, and otherwise **DENIED**. MetLife is **DIRECTED** to make a search of the *Weathers* files for said documents and, within 14 days of the date of this order, either (i) inform the plaintiffs, in writing, that no such documents exist or, (ii) if such documents do exist, produce them if not previously produced and/or inform the plaintiffs, in writing, that they have previously been produced.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 27th day of September, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge