## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| HOLLIE T. NOVELETSKY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Civil No. 2:12-cv-00021-NT |
| METROPOLITAN LIFE | ) |
| INSURANCE COMPANY, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER ADOPTING IN PART
## THE MAGISTRATE'S RECOMMENDED DECISION

On February 15, 2013, the United States Magistrate Judge filed his Recommended Decision on Defendant Alan Silverman's motion for summary judgment (ECF No. 137) (the "**Recommended Decision**"). The Plaintiffs timely filed an objection to the Magistrate Judge's Recommended Decision on February 19, 2013 (ECF No. 138). On April 25, 2013, I heard oral argument on the objection to the Recommended Decision. I have reviewed and considered the Recommended Decision together with the entire record and the parties' arguments, and I have made a *de novo* determination of all matters adjudicated by the Recommended Decision.

For reasons discussed below, I find that Silverman is entitled to judgment on all but one of Noveletksy's claims.[1] The Plaintiffs do not contest the Magistrate

---

[1]    The Plaintiffs include Hollie Noveletsky, Noveletsky's son, Joshua Rosenthal, and Thomas Heaney, the current trustee of an irrevocable life insurance trust created and funded by Noveletsky. The operative pleading is the Plaintiffs' First Amended Complaint (ECF. No. 40), which alleges eleven counts jointly on the part of all of the Plaintiffs. Eight of the counts are directed at Silverman, including Count II (Breach of Fiduciary Duty in Selection and Sale of the Policy), Count III (Breach of Fiduciary Duty in Imprudent Administration of the Trust), Count V (Negligence), Count VII (Violation of Maine's Unfair Trade Practices Act), Count VIII (Misrepresentation), and Count X

Judge's recommendation that Silverman is entitled to summary judgment on Plaintiff Rosenthal's claims, and I adopt this part of the Recommended Decision. I also concur with and hereby adopt the Magistrate Judge's recommendation to grant summary judgment in favor of Silverman on Plaintiff Heaney's claims for the reasons stated in the Recommended Decision.[2]

## BACKGROUND

The Court refers the reader to the Magistrate Judge's more detailed recounting of the material facts introduced by the parties, and recites here only a brief summary of those facts.

The seeds of this lawsuit were planted over a decade ago, in the spring of 2001, when Plaintiff Hollie Noveletsky asked her best friend and ex-sister-in-law, Defendant Francine Temkin (née Rosenthal), to help her plan for her son Joshua Rosenthal's inheritance of the family businesses. Noveletsky was specifically concerned with providing her son with sufficient funds to pay estate taxes following her death. Noveletsky's own father had died in December of 1999, and, by agreement with the IRS, Noveletsky was incrementally paying off a $6 million estate tax liability. Noveletsky turned to Temkin, who was a life insurance agent for Defendant Metropolitan Life Insurance Company ("**MetLife**"). Temkin told Noveletsky that her situation was "too complex" for Temkin and referred Noveletsky to Silverman, also a MetLife agent. Silverman was a Chartered Life

---

(Unjust Enrichment). In a letter to opposing counsel dated September 12, 2012, the Plaintiffs represented that they were not pursuing the remaining two claims against Silverman—Count IX (Breach of Implied Contract) and Count XI (Breach of Warranty of Suitability). *See* Joint R. Ex. H (ECF No. 93-8).

[2]    Silverman pled the statute of limitations as an affirmative defense against all defendants but he does not move for summary judgment against Noveletsky on this ground.

Underwriter, chartered financial consultant, certified public accountant, and certified financial planner who did business under the names Silverman Wealth and Income Strategies and Silverman Estate Planning and Financial Group.

At Silverman's request, Noveletsky shared financial information with Silverman. The two discussed the amount of money needed to cover the estate tax liability ($5 million), and Silverman recommended a MetLife whole life policy that had a $5 million death benefit and that required annual policy payments of $66,750. Noveletsky and Silverman also discussed term life policies, which Silverman did not recommend. On July 12, 2001, Silverman generated an illustration of the projected outlays for and benefits of the policy. Neither of the parties have a clear recollection of whether Silverman presented the illustration directly to Noveletsky, though it is at least clear that they discussed the projected outlays and benefits of the policy. The projection showed Noveletsky making annual $66,750 premium payments for an estimated (but not guaranteed) 10 to 12 years before dividends earned by the policy would be great enough to cover premium payments going forward. Noveletsky recalls Silverman telling her that it would take 10 to 12 years depending on the economy. Silverman recommended that Noveletsky establish an irrevocable life insurance trust ("**ILIT**") to hold the recommended policy, and he referred Noveletsky to an attorney to prepare the ILIT.

Following Silverman's advice, Noveletsky set up the ILIT with the attorney recommended by Silverman, named Temkin as the ILIT's trustee, and arranged to make payments into the ILIT out of her own funds on an annual basis. Once the funds were placed in the ILIT, Temkin used them to purchase the MetLife policy and to maintain its annual premiums. Noveletsky paid no money directly to

Silverman for his services, but Silverman received a commission from MetLife for the sale of the policy.

In 2011, Noveletsky discovered that the original 10-12 year projections for premium payments were off-track and had been extended to eighteen years.[3] She also learned that Temkin had split the commission on the policy with Silverman and that they each earned $42,609.28.

Noveletsky contends, both in her underlying opposition to Silverman's motion for summary judgment as well as in her objection to the Recommended Decision, that there are triable issues of fact regarding whether Silverman provided financial planning or business succession planning for her and whether Silverman's alleged bad advice caused Noveletsky financial harm. Noveletsky alleges that a universal life policy would have accomplished her goal of providing a $5 million benefit at a much lower annual premium than she had been paying to the ILIT to fund the MetLife Policy.

Silverman acknowledges that Noveletsky was his client, at least indirectly. But he claims, and the Magistrate Judge agreed, that "to the extent that Noveletsky's claims implicate the MetLife policy—for example, that the policy was unsuitable when sold, became increasingly unsuitable, and/or did not perform as expected or promised—she has no standing to sue him." Recommended Decision 22.

---

[3]     Noveletsky had contacted Silverman in 2009 to inquire about skipping an annual premium due to cash flow problems at Noveletsky's business, stemming from the 2008 financial crisis. Silverman told Noveletsky that a missed premium would extend the time it would take for the dividends to cover the premiums, but he did not inform Noveletsky during this conversation that the 10-12 year projections were not going to be met.

the potential of affecting the outcome of the case." *Calero-Carezo v. U.S. Dep't of*

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, the Court shall grant summary judgment if the movant shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has *Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

"To demonstrate the existence of a genuine issue of material fact, plaintiffs must point to concrete, admissible evidence. Mere allegations, or conjecture unsupported in the record, are insufficient." *Rivera-Marcano v. Normeat Royal Dane Quality*, 998 F.2d 34, 37 (1st Cir. 1993) (citations omitted). "So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Carezo*, 355 F.3d at 19. The "ground rules for summary judgment leave 'no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)' on the cold pages of the record." *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) (quoting *Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir. 1987)).

The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson,* 477 U.S. at 249. The Court construes the record in the light most favorable to the nonmovant and resolves all reasonable inferences in the party's favor. *See Sensing v. Outback Steakhouse of Florida, LLC,* 575 F.3d 145, 153 (1st Cir. 2009).

## DISCUSSION

### I.   Standing

The Court adopts the Magistrate Judge's conclusion that Noveletsky has no standing to pursue any claim that Silverman caused a waste of trust assets by advising Temkin to purchase an unsuitable life insurance policy. This disposes of Counts VII and X as between Noveletsky and Silverman.[4]

The Court pauses, however, to consider Noveletsky's claim that she sustained harm distinct from any harm experienced by the trust, and that Silverman is at least in part responsible for this harm. Noveletsky's claim to individual harm is based on: (1) her payments into the ILIT of money in excess of what she claims was necessary to accomplish the ILIT's goals; and (2) adverse tax consequences to Noveletsky arising out of these payments due to the excessive amount and the structure of the payments.

The standing inquiry has three components: injury, causation, and redressability. *See Katz v. Pershing, LLC,* 672 F.3d 64, 71 (1st Cir. 2012); *Proctor v.*

---

[4]      Count VII alleges violations of Maine's Unfair Trade Practices Act, 5 M.R.S. §§ 207-213. A private right of action under this Act is limited to, in relevant part, a consumer who "purchases or leases goods," *id.* at § 213, which Noveletsky did not do. Count X alleges unjust enrichment based on the commission MetLife paid to Silverman upon sale of the MetLife policy. Because this payment was derived from purchase of the policy by the ILIT, it is the ILIT's claim and not Noveletsky's.

*Cnty. of Penobscot*, 651 A.2d 355, 357 (Me. 1994).[5] On summary judgment, Silverman challenged only the first of these requirements. He claimed that, because the MetLife policy was sold to the ILIT, the ILIT was the only entity that could have sustained an injury, and Noveletsky as a mere settlor had no standing to bring claims on behalf of the ILIT. Silverman's Mot. for Summ. J. 3-7 (ECF No. 95). But, according to Noveletsky, Silverman's bad advice caused her personally to part with funds she would otherwise have retained and caused her to suffer adverse tax consequences.[6] *See Pershing,* 672 F.3d at 71 (injury in fact "is defined as 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical'"); *Proctor,* 651 A.2d at 357 (the injury must be an "injury in fact" that is a "particularized injury . . . resulting from an action adversely and directly affecting the party's property, pecuniary or personal rights").

Silverman relies on the terms of the ILIT, in which Noveletsky expressly "relinquished every interest of any nature, present or future, in the Trust estate." Pls' Resp. to Silverman's Statement of Material Facts ¶ 17 (ECF No. 104). But the fact that Noveletsky relinquished her interest in the trust estate does not necessarily preclude Noveletsky's claim that she was fraudulently induced to create the trust in the first place.

---

[5]      The parties both cite to Maine as well as federal law regarding standing, although neither party asserts which law controls. Those courts that have addressed the issue appear to agree that, where a federal court's jurisdiction is based on diversity of citizenship, a plaintiff must have standing under both federal and state law in order to maintain a cause of action. *See, e.g., Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 173 (2d Cir. 2005).

[6]      Silverman claims (for the first time in his response to Noveletsky's objection to the Recommended Decision) that Noveletsky has failed to establish the second prong of standing, i.e., that he was a cause of any harm to her, because he had no relationship with Noveletsky. But Noveletsky's claim that she suffered losses because of Silverman's misrepresentations to her states a straightforward case for causation.

Silverman cites a number of cases from other jurisdictions in support of his claim that a settlor has no standing to sue for losses to an ILIT. But none of these cases address whether a settlor should have standing where the defendant is alleged to have fraudulently induced the settlor to place her funds into an ILIT. Some of Silverman's cases are factually inapposite.[7] Other cases, including *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 962 (N.D. Ill. 2000), and *Pike v. N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1049 (N.Y. App. Div. 2010), deal with circumstances similar to Noveletsky's but offer no analysis of the issue. One recent opinion, *Address v. Millstone*, 56 A.3d 323, 333 (Md. Ct. Spec. App. 2012), published after the parties filed their initial briefs on summary judgment, specifically finds that the settlor had no standing to assert claims for any premium payments made on ILIT policies. Even this opinion, however, merely relies on *Pike* and does not analyze why the settlor's claim of fraudulent inducement fails to create standing.

In *Sanders v. Citizens Nat'l Bank of Leesburg*, 585 So. 2d 1064 (Fla. Dist. Ct. App. 1991), the court acknowledged the "well-recognized" rule that the settlor of an irrevocable trust cannot sue to enforce the trust, but the court also pointed out exceptions to that rule where a settlor is fraudulently induced to establish the trust. The court in *Sanders* explained that this exception "appears designed to protect against a fraudulent misrepresentation made to procure establishment of a

---

[7]      In *Rosenthal v. Nierenberg*, No. 09 Civ. 8237 (NRB), 2010 WL 3290994, at *3-6 (S.D.N.Y. Aug. 10, 2010), the insured—who did *not* fund a policy insuring his life, and who was not a beneficiary—lacked standing to sue an agent for allowing the policy to lapse. In *Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super. Ct. 1998), a father who by terms of his divorce settlement was required to contribute to an ILIT for the benefit of his children had no standing to demand an accounting of the trustee. At least one of the other cases cited by Silverman appeared to involve the negligent performance of the trustee's duties. *See Berardino v. Ochlan*, 2 A.D.3d 556, 557 (N.Y. App. Div. 2003) (ILIT settlor had no standing to sue when one policy in the ILIT was exchanged for another, resulting in a lower policy cash value).

charitable trust, not the negligent performance of the fiduciary's duties, or even misrepresentations made to the settlor in the course of carrying out the trustee's duties . . . ." *Id* at 1066.

As the Magistrate Judge pointed out, there is no controlling Maine authority. As a federal court sitting in diversity, this Court has an obligation to provide its "best guess" as to open questions of state law, but it also has an obligation to "tread lightly in offering interpretations of state law where controlling precedent is scarce." *Noonan v. Staples, Inc.*, 556 F.3d 20, 30 (1st Cir. 2009). The Court is reluctant to dismiss claims for lack of standing where the parties have found no Maine law establishing either a general rule that the settlor of an ILIT has no standing to sue or an exception to that general rule for fraudulent misrepresentations made to induce the settlor to establish the trust. Accordingly, the Court goes on to consider Silverman's alternate ground for summary judgment, i.e., that he owed no duties to Noveletsky.

## II.  **Breach of Duty**

The record supports a finding that Silverman had a relationship of some sort with Noveletsky. He spoke directly with Noveletsky about insurance policy options, requested and reviewed financial documents from Noveletsky, completed a trial application, referred Noveletsky to an attorney for preparation of an ILIT, and explained how his recommended MetLife policy was projected to work. Silverman admitted that he considered Noveletsky his client, at least "indirectly" up until the creation of the ILIT, and he acknowledged that he provided "wealth planning,

estate planning, [and] insurance planning" to Noveletsky.[8] Noveletsky claims that she relied on Silverman's advice and representations in setting up and funding the ILIT.

Noveletsky claims that Silverman breached fiduciary duties to her (Counts II and III) and that he was negligent in his provision of advice to her (Count V). Each of these counts requires Noveletsky to establish that Silverman owed some type of duty to Noveletsky. The parties agree that Maine law controls.

### A. Fiduciary Duties

The Law Court has long held that the salient elements of a fiduciary relationship are "(1) the actual placing of trust and confidence in fact by one party in another and (2) a great disparity of position and influence between the parties at issue." *Stewart v. Machias Sav. Bank*, 762 A.2d 44, 46 (Me. 2000) (quoting *Bryan R. v. Watchtower Bible and Tract Soc. of N.Y., Inc.*, 738 A.2d 839, 846 (Me. 1999)); *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975).

In *Stewart*, the Law Court refused to find a fiduciary or confidential[9] relationship between an inexperienced home buyer and a bank. "To demonstrate the necessary disparity of position and influence in such a bank-borrower relationship, a party must demonstrate 'diminished emotional or physical capacity or . . . the letting down of all guards and bars.'" *Stewart*, 762 A.2d at 46 (quoting *Diversified*

---

8    *See* Silverman's Resp. to Pls.' Statement of Additional Material Facts ("**SRPSAMF**") ¶¶ 6 and 7 (ECF No. 111) and deposition testimony cited therein.
9    A fiduciary relationship is the same as a confidential relationship, which gives rise to the same duties. *Stewart*, 762 A.2d at 46, n.1.

*Foods, Inc. v. First Nat'l Bank of Bos.*, 605 A.2d 609, 615 (Me. 1992)).[10] The Law Court "will not impose fiduciary duties based on arms-length business relationships alone." *Ramsey v. Baxter Title Co.,* 54 A.3d 710, 713 (Me. 2012).

The Law Court has described the fiduciary relationship "as 'something approximating business agency, professional relationship, or family tie *impelling or inducing the trusting party to relax the care and vigilance ordinarily exercised*.'" *Bryan R.,* 738 A.2d at 846 (quoting *L.C. v. R.P.*, 563 N.W.2d 799, 801-02 (N.D. 1997) (internal quotation and alterations omitted) (emphasis added). Some relationships – trustee/beneficiary, attorney/client or guardian/ward – are automatically considered fiduciary in nature. Where the relationship is not automatically considered to be fiduciary, the two-part test must be applied. In *Bryan R.,* the Law Court affirmed the dismissal of a plaintiff's claim for breach of fiduciary duty. There, a minor parishioner had been sexually molested by another parishioner. The minor sued the church elders for breach of fiduciary duty, arguing that they knew that the offending parishioner had previously molested another minor and yet they did nothing to prevent the offending parishioner from having contact with minors in the congregation. The Law Court, rejecting the argument that a fiduciary relationship existed between the church elders and the plaintiff, noted that "a 'general allegation of a confidential relationship is not a sufficient basis for establishing the existence of one.'" *Bryan R.*, 738 A.2d at 846 (quoting *Ruebsamen*, 340 A.2d. at 35.)   A fiduciary duty:

---

[10]     In *Stewart*, the Law Court reversed the superior court's denial of the bank's motion for judgment as a matter of law applying a standard identical to that used on a motion for summary judgment.

does not arise merely because of the existence of kinship, friendship, business relationships, or organizational relationships. A fiduciary duty will be found to exist, as a matter of law, only in circumstances where the law will recognize both the disparate positions of the parties *and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue.*

*Bryan R.,* 738 A.2d at 846 (emphasis added).

### 1. Insurance Agent Plus

Noveletsky claims that Silverman had a fiduciary duty to her because his role went beyond that of an insurance agent into that of a financial planner. Under Maine law:

An insurance agent generally assumes only those duties found in an ordinary agency relationship, that is, to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party. An insurance agent does not have a duty to advise an insured about adequacy of coverage merely because an agency relationship exists between the parties. Before such a duty can arise, a special agency relationship must exist between the parties.

*Szelenyi v. Morse, Payson & Noyes Ins.,* 594 A.2d 1092, 1094 (Me. 1991) (internal citations and footnote omitted); *see Ghiz v. Richard S. Bradford, Inc.,* 573 A.2d 379, 380-81 (Me. 1990) (insurance agent does not have duty to advise insured as to adequacy of coverage). The mere purchase of an insurance policy is not enough to create a special agency relationship.[11]

Noveletsky cites a number of cases from other jurisdictions that hold that insurance professionals who provide financial planning or investment advice

---

[11]     In *Ghiz,* the plaintiff purchased insurance from the agency, and that was not enough to create an agency relationship. *Ghiz,* 573 A.2d at 380. "Agency is the fiduciary relationship 'which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Perry v. H.O. Perry & Son Co.,* 711 A.2d 1303, 1305 (Me. 1998) (quoting *Desfosses v. Notis,* 333 A.2d 83, 86 (Me. 1975)).

assume fiduciary duties. But these cases are distinguishable either because they allege sufficient facts to establish a financial advisor relationship, or because they involve the selling of questionable products to a vulnerable population. S*ee Maybank v. BB&T Corp.*, Civ. A. No. 6:12-cv-00214-JMC, 2012 U.S. Dist. LEXIS 108480, at *7-12 (D.S.C. Aug. 3, 2012) (plaintiff engaged defendants to devise retirement investment plan that reflected plaintiff's goals of diversification, steady income, tax sheltering, and ability to protect wealth for heirs); *Tonzi v. Nichols*, 899 N.Y.S.2d 63, *2-4 (N.Y. Sup. Ct. 2009) (defendant, plaintiff's accountant and financial advisor for over twenty years, advised plaintiff to roll over 401K and invest in viatical contracts, which are essentially life insurance policies surrendered for cash value by terminally ill or elderly policyholders); *Negrete v. Fid. and Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1003 (C.D. Ca. 2006) (insurance company targeted senior citizens and sold insurance policies disguised as investments that matured after purchasers' actuarial life expectancy); *Murphy v. Nw. Mut. Ins. Co.*, No. 03-0864-CV-W-HFS, 2005 U.S. Dist. LEXIS 43627, at *11 (W.D. Mo. June 13, 2005) (life insurance agent contacted plaintiff to discuss retirement planning and sold plaintiff insurance policies described as retirement plan); *Cunningham v. PFL Life. Ins. Co.*, 42 F. Supp. 2d 872, 888 (N.D. Ia. 1999) (insurance agents introduced themselves as investment counselors; described products as investment vehicles similar to mutual funds or individual retirement accounts and concealed that products were life insurance).

The Court agrees with the Magistrate Judge that, even viewed in the light most favorable to Noveletsky, the record does not establish that Silverman provided financial management services to her. Recommended Decision 31.[12] Silverman recommended and sold a life insurance policy to Noveletsky. To the extent Silverman considered Noveletsky's financial situation in making his recommendation, he was no different from an ordinary life insurance agent attempting to fit a policy to the needs of his client.

The parties point to no Maine case law establishing a fiduciary relationship between a person purchasing a life insurance policy and an insurance agent who takes financial considerations of the insured into account. In *Jamshab v. Nationwide Ins. Co.*, No. 04-50-P-C, 2004 WL 3007089, at *9 (D. Me. 2004) (Rec. Dec., aff'd in part, rejected in part on other grounds, February 22, 2005), the district court found no "special relationship" under Maine law between an insurance sales agent and a person seeking a life insurance policy. *See also, Morse Bros. Inc. v. Desmond & Payne, Inc.,* Nos. CV-02-365 & CV-03-249, 2005 WL 1845167, at *6-7 (Me. Super. Ct.  Apr. 22, 2005) (despite a "long-standing business relationship during which [insurance agent] regularly addressed blanket insurance coverage" for plaintiff, absent agreement to advise about sufficiency of coverage there was "no more than an ordinary agent-insured relationship.") This Court declines the

---

[12]     The Plaintiffs fault the Recommended Decision for including only "dry facts" without taking the next step of making all inferences in their favor. The Plaintiffs argue, for example, that because Silverman was a CPA and used the title, the Court must infer that Silverman held himself out as a practicing CPA to Noveletsky and must be held to the standard of care for CPAs. But, Silverman had not practiced as a CPA since 1986 and Noveletsky was not paying Silverman for accounting services. The inference Noveletsky asks the Court to make is not reasonable.

invitation to establish a fiduciary duty for insurance agents who take into consideration financial information of the insured. Instead, the Court will consider the two-part test used in Maine to determine whether a fiduciary relationship otherwise exists.

### 2.  The Maine Two-Part Test

#### i.   *Placing of trust and confidence*

Noveletsky's claims that she placed trust and confidence in Silverman do not in themselves create a triable issue of fact. The Court must examine the circumstances surrounding that claim to determine whether there exists a reasonable basis for finding that Noveletsky was impelled or induced to place her trust and confidence in Silverman. *See Bryan R.*, 738 A.2d at 846.

Noveletsky asserts two bases for her placement of trust in Silverman: (1) she was introduced to Silverman by Temkin, her former sister-in-law and best friend; and (2) Silverman did business under the names "Silverman Wealth and Income Strategies" and "Silverman Estate Planning and Financial Group" and held himself out as a certified public accountant, investment advisor, and certified financial planner.

First, the fact that Silverman was recommended to Noveletsky by a former relative and friend cannot be a basis for Silverman assuming fiduciary obligations toward her. Silverman and Noveletsky themselves had no prior relationship, and nothing in the record suggests that they developed the sort of close advisory

relationship that would induce Noveletsky to let down all guards and bars. See *Stewart*, 762 A.2d at 46; *Ramsey,* 54 A.3d at 713.

Second, the fact that Silverman advertised himself as capable of providing an array of financial services does not mean that he provided those services to Noveletsky. The record establishes that Noveletsky went to Silverman to obtain a life insurance policy appropriate to cover her estimated estate taxes. The fact that Silverman reviewed some of Noveletsky's financial information does not convert the sale of an insurance policy into the provision of financial planning.

The record establishes no contractual relationship between Noveltsky and Silverman for financial planning or investment services. Nor are there facts supporting the existence of a special agency relationship between Noveletsky and Silverman. Silverman never represented to Noveletsky that he would provide financial planning or investment advice. Silverman referred Noveletsky to a trust attorney, and she had her own accountant. She did not use Silverman for investment advice beyond the purchase of the life insurance policy through the ILIT.[13] Noveletsky never compensated Silverman for any financial planning or accounting services. She merely purchased (through the recommended ILIT mechanism) an insurance policy, and Silverman received the typical commission on

---

[13]     Silverman admitted in his deposition that he provided wealth, estate, and insurance planning for Noveletsky. Silverman Dep. at 66-68. Silverman also stated that he did not provide financial planning services to Noveletsky. *Id.* Noveletsky's cases support the idea that a *financial planner* may have fiduciary duties to clients. But Noveletsky provides no authority for the proposition that fiduciary duties may attach to someone providing wealth, estate, or insurance planning. Noveletsky did not developed what specific services fall under the terms "wealth planning," "estate planning" or "insurance planning," and she has failed to show the legal significance, if any, of those terms.

the sale. Nothing about this relationship provides a reasonable basis for Noveletsky to let down all guards and bars; nothing about this relationship impels or induces the placement of trust and confidence.

> ii.   *Disparity of position and influence*

Even if Noveletsky did reasonably place trust and confidence in Silverman, the record does not support Noveletsky's claim that there was a great disparity of position and influence between Noveletsky and Silverman. While occasionally "confidential relations can, and do, exist between" "mature individuals in full possession of their faculties," *Ruebsamen*, 340 A.2d at 36, nothing in Maine law suggests that such relationships may spring into existence any time a professional offers advice on a product they are selling, and a customer follows that advice. To establish a disparity of position and influence, the Maine cases require something extra – a vulnerability[14] or hidden agenda.[15] Noveletsky lacks vulnerability and she does not identify a hidden agenda. Noveletsky is an educated professional with no family connection to Silverman. Silverman's commission on the sale of the policy

---

[14]   *Ruebsamen* involved a unique family/business relationship. In *Ruebsamen,* the Law Court refused to overturn the trial court's finding of a confidential relationship between on the one hand a father and daughter and on the other hand the daughter's then-husband. The father and daughter "reposed actual trust and confidence in the judgment and abilities of the defendant. They relied on his business experience in allowing him to procure real estate for them and in paying for the real estate the defendant selected. Plaintiffs apparently believed that the land combination urged by defendant presaged a profitable speculation in the Maine wilderness. To that end, plaintiffs advanced substantial funds and services to aid defendant and to further, as they thought, the family cause." *Ruebsamen*, 340 A.2d at 36.

[15]   *Fleet Nat'l Bank v. Mayeux*, No. CV-03-247, 2005 Me. Super. LEXIS 193, at *11-12 (Me. Super. Dec. 14, 2005) ("most if not all cases involving breach of fiduciary duty involve situations where the alleged fiduciary had a hidden agenda") (citing *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993)). In *Morris*, the defendant loan officer offered advice to the plaintiff that was designed to advance the interests of another customer of the bank in a way that injured the plaintiff. *Morris*, 622 A.2d at 712.

was not hidden from Noveletsky.[16] Noveletsky approached Silverman as someone who had the necessary expertise to sell her an "appropriate" life insurance policy, and Silverman, in an acknowledged sales context, provided his professional advice. Without more, it is impossible to conclude that Silverman undertook any fiduciary duties toward Noveletsky. *See Stewart*, 762 A.2d at 46; *Morris,* 622 A.2d at 712; *Ruebsamen*, 340 A.2d at 36, *see also Mayeux*, 2005 Me. Super. LEXIS 193, at *11-12.

Because no reasonable factfinder could conclude on the basis of the record presented that Silverman assumed the role of financial planner or investment advisor or that there was otherwise a fiduciary relationship between these parties, Noveletsky's breach of fiduciary duty claims against Silverman do not survive.

### B. Negligence

Noveletsky also claims that Silverman was negligent in his advice and representations to her. However, the Maine Law Court has said:

> Apart from contractual undertakings between the parties, an agency relationship, or fraud or misrepresentation, we see no basis upon which to recognize an action for negligence against the seller of a product like insurance for the seller's conduct in advising a purchaser what product to buy.

*Ghiz*, 573 A.2d at 380. Ghiz, a first-time homebuyer, explained to his insurance agent that he wanted to buy a "good" policy that protected against common risks for houses in Orono, Maine. *Id.* The agent recommended and sold Ghiz a policy that did

---

[16]     Noveletsky argues that "Silverman abused [Noveletsky's] trust by obtaining an undisclosed $43,000 commission." Pls' Opp. to Silverman's Mot. for Summ. J. 20 (ECF No. 103). However, the statement of material fact cited in support of this claim states only that Silverman received a $42,609.28 commission upon sale of the MetLife Policy, not that this commission was undisclosed. Pls.' Statement of Additional Material Facts ¶ 98 (ECF No. 104). Even if Noveletsky was not informed of the amount of the commission, it is common knowledge that an insurance professional who provides otherwise unpaid advice to a customer will receive a commission upon the sale of an insurance policy.

not cover property damage from frozen, cracked pipes, even though there were policies that covered such risks. When, several years later, his pipes froze and burst, Ghiz learned that his policy did not cover this risk. *Id.* The Law Court declined to impose liability on the insurance agent for the Ghiz's loss. *Id.* at 381. Following Maine law, this Court cannot impose any greater liability on Silverman.

Noveletsky argues in her opposition to the motion for summary judgment that Silverman breached the duty of care owed by a financial advisor and an accountant, referring back to the cases wherein an insurance agent, acting as a financial advisor, sells an insurance product as an investment vehicle. As addressed in Part II.A.1, above, Noveletsky's cases are distinguishable and none apply Maine law. On this record, it cannot be said that Silverman acted as a financial planner or accountant, and the Court is unwilling to impose duties associated with those roles upon him. To the extent there are any other duties owed under a negligence theory, Noveletsky has not provided adequate evidentiary support.[17]

---

[17]    Noveletsky asserts that Silverman failed her in many ways, including failing to undertake a financial needs analysis, failing to review the possibility of a universal life policy versus a whole life policy, failing to advise her of the tax consequences of funding the recommended insurance policy through income from her companies, failing to recommend a "split dollar" method to fund the policies, failing to inform her that she did not achieve a "preferred" rating in the underwriting process, failing to inform her that Temkin was also profiting from a commission on the sale of the policy to the ILIT, and failing to keep her informed of the underperformance of the policy as the years progressed. Extensive as this list is, it begs the question whether Silverman owed Noveletsky a duty under the relevant professional standard of care. It is not sufficient merely to list ways in which Silverman could have given better or more complete advice and recommendations. Noveletsky has the burden of establishing, through expert testimony or otherwise, a triable issue of fact that Silverman's professional relationship with her required him to do any or all of these things.
    Furthermore, Silverman's point—that the standard of care to apply to his relationship with Noveletsky is not obvious—is well taken. *See Seven Tree Manor, Inc. v. Kallberg*, 688 A.2d 916, 917 (Me. 1997) ("when the negligence and harmful results are not sufficiently obvious as to be within common knowledge, expert evidence is essential to sustain an action for negligence"); *see also Mayeux*, 2005 Me. Super. LEXIS 193, at *13-17 (at summary judgment stage, expert testimony on standard of care expected of a financial planner was sufficient to establish question whether bank, acting as financial planner, breached a duty to revisit a "stock collar" with plaintiff client).

### III. __Misrepresentation__

Noveletsky claims, finally, that Silverman is liable to her for misrepresentation. Maine recognizes both fraudulent and negligent misrepresentation. A defendant is liable for fraudulent misrepresentation when he:

> (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

*St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 818 A.2d 995, 1003 (citing *Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979)).

Maine defines the tort of negligent misrepresentation in accordance with the *Restatement (Second) of Torts* as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (quoting and adopting the Restatement (Second) of Torts § 552(1) (1977)).

---

Noveletsky asserted at oral argument that Silverman failed to raise this issue at summary judgment, and she claimed that she does have an expert who will opine regarding Silverman's breach of duty. However, Silverman did squarely assert that he owed no duty of care to Noveletsky. *See* Silverman's Mot. for Summ. J. 22-24. This was sufficient to require Noveletsky to produce evidence that Silverman owed her a duty and what that duty was. If she had expert testimony relevant to the point, it was incumbent upon her to provide it in opposition to Silverman's claim. Finally, Noveletsky points to Silverman's admission that he considered the gift tax exclusion in connection with the advice he gave to Noveletsky. SRPSAMF ¶ 73. But Silverman's admission that he considered the exclusion is not evidence that Silverman had a duty to advise Noveletsky on it.

In addition to her claim that Silverman is liable for an affirmative misrepresentation, Noveletsky also claims that Silverman is liable for fraudulently failing to disclose information. In Maine, fraud by failure to disclose or by silence may be established in three ways: (1) by demonstrating active concealment of the truth, *see McGeechan v. Sherwood,* 760 A.2d 1068, 1081 (Me. 2000); *Fitzgerald v. Gamester,* 658 A.2d 1065, 1069 (Me. 1995); (2) by demonstrating a special relationship, such as a confidential or fiduciary relationship, that imposes an affirmative duty to disclose; *see McGeechan,* 760 A.2d at 1081; *Fitzgerald,* 658 A.2d at 1069; *Glynn v. Atl. Seaboard Corp.,* 728 A.2d 117, 120 (Me. 1999); or (3) by pointing to a statutory duty to disclose. *See Binette v. Dyer Library Ass'n,* 688 A.2d 898, 904 (Me. 1996); *see also Dickey v. Vermette,* 960 A.2d 1178, 1182 (Alexander, J., dissenting).

For her failure to disclose theory, Noveletsky argues that Silverman had duties to disclose based on both statutes and on Silverman's fiduciary relationship with her. The fiduciary duty argument has already been rejected. With respect to statutory duties, Noveletsky cites regulations from Massachussetts that apply to CPAs and regulations from Maine that apply to insurance agents. Pls' Opp. to Summ. J. 26-27. As previously stated, there is no record support for the proposition that Silverman was acting as a CPA, and Noveletsky cites no authority for the proposition that the regulations apply to a CPA when he is not engaged in the practice of public accounting. Although Noveletsky quotes the Maine insurance regulations, she fails to provide record support for the proposition that Silverman's

omissions breached any of the recited duties. *See* Pls' Opp. to Summ. J. 28. Silverman is the party moving for summary judgment, but it remains Noveletsky's burden to establish triable issues of fact on the elements of the claims she has made against him. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Last, the Court considers Noveletsky's claim that Silverman is liable for supplying her with false information. She alleges that Silverman told her that she would have to make premium payments on the MetLife policy "for 10, maybe 12 years max and the policy would pay for itself out of its dividends." Pls' Opp. to Summ. J. 27 and SRPSAMF ¶63. Silverman counters that Noveletsky admitted in her deposition that he had explained that the number of payments required would depend on the economy, just as Noveletsky's business did. *See* SRPSAMF ¶ 63 and deposition testimony cited therein. Making all inferences in Noveletsky's favor, as the Court is required to do at this stage of the proceedings, a reasonable jury could find that Silverman's 10-to-12-year assertion defined the outside limits of what Noveletsky could expect for payments – i.e., ten years in a good economy, twelve years in a bad economy. This could be interpreted as an assurance that Noveletsky would not be required to make more than twelve annual payments. The Court also concludes that this claim satisfies the three components of the standing inquiry:

injury, causation, and redressability. *See Katz*, 672 F.3d at 71; *Proctor*, 651 A.2d at 357. Noveletsky alleges that Silverman provided her with false information that she relied on to her detriment and that Silverman's misrepresentation induced her to create and fund the ILIT and caused her adverse tax consequences.

For these reasons, Noveletsky's misrepresentation claim survives, but only as to her allegation that Silverman misrepresented the nature and terms of the MetLife policy.

## CONCLUSION

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED in part** as modified by this order. The Court adopts the Magistrate Judge's recommendations and **GRANTS** summary judgment to Defendant Silverman on Plaintiff Rosenthal's and Plaintiff Heaney's claims for the reasons stated in the Recommended Decision. By agreement of the parties, Counts IX and XI of the First Amended Complaint are **DISMISSED** as against Defendant Silverman. The Court also **GRANTS** Defendant Silverman's motion for summary judgment as to Counts II, III, V, VII, and X of the First Amended Complaint. The Court **DENIES** Defendant Silverman's motion for summary judgment as to Count VIII, but only as to the Plaintiff's affirmative misrepresentation claim. *See* First Am. Compl. ¶ 52.

**SO ORDERED**.

Dated this 14th day of June, 2013.

/s/ Nancy Torresen
United States District Judge